WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>v.<br><br>Shawmaine Eustace Ardell Moore,<br><br>   Defendant. | CR-18-01695-003-TUC-JAS (EJM)<br><br>**REPORT AND RECOMMENDATION** |

   Pending before the Court is a Motion to Suppress Statements filed by defendant Shawmaine Eustace Ardell Moore ("Moore").  (Doc. 1148.) For the reasons discussed below, the Court recommends that the District Court grant the motion, in part, and suppress the statements detailed below.

## FACTUAL BACKGROUND

   The defendant is charged in a Second Superseding Indictment with eighteen other individuals with offenses related to his alleged membership in a street gang known as the Western Hills Bloods.  Doc. 811.   He is charged in a RICO conspiracy, the objects of which include murder, violent acts, drug trafficking, and obstruction of justice.  (Count One).  He is also charged with Conspiracy to Commit Murder in Aid of Racketeering (Count Two), Murder in Aid of Racketeering (Count Three), and Use of a Firearm Resulting in Death (Count Four).[1]

---

[1]  A Third Superseding Indictment was returned on April 6, 2022, which does not add defendants or charges. [Doc. 1425.]  As such, the Court addresses the Second Superseding Indictment which was pending at the time the instant motion was filed.

On February 22, 2022, the defendant filed a Motion to Suppress Statements made during four interviews with law enforcement while he was in state custody on a prohibited possessor charge.  (Doc. 1148.)  The interviews occurred on the following dates: (1) June 27, 2015; (2) August 20, 2015; (3) August 25, 2015; and (4) December 10, 2015.  The defendant argues that the statements made at the first interview on June 27, 2015, after his arrest that day for being a prohibited possessor of a firearm, should be suppressed because the government cannot prove that he validly waived his *Miranda* rights.   With respect to the second interview on August 20, 2015, which occurred after the defendant was charged in state court with a prohibited possessor offense, the defendant concedes that he was properly advised of his rights and lawfully waived those rights.  However, the defendant argues that certain statements made during the August 20, 2015 interview that pertained to the pending state charge should be suppressed because they were obtained in violation of his Sixth Amendment right to counsel which had attached by the time of that interview.  The defendant makes the same Sixth Amendment argument for certain statements made during an interview on December 10, 2015.  Finally, the defendant argues that statements made during the third and fourth interviews, conducted on August 25, 2015 and December 10, 2015, should be suppressed because he was never provided with *Miranda* warnings prior to those interviews.

The government argues that the defendant was properly advised of his *Miranda* rights and validly waived those rights prior to the first interview on June 27, 2015.   As to the second interview on August 20, 2015, the government argues that this interview concerned a different crime that was unrelated to the pending state charge for which the defendant had counsel.  Because the Sixth Amendment right to counsel is offense specific, that right was not violated by officers interviewing him about a different and uncharged crime.  Also, the government argues suppression is not warranted because the defendant never invoked his Sixth Amendment right to counsel during any interview.  Finally, the government argues that the failure to provide *Miranda* warnings before the third and fourth interview is not a constitutional violation because a defendant need not be readvised of

*Miranda* rights simply because there is a break in questioning.

The Court held a hearing on the motion to suppress on March 24, 2022, and March 30, 2022.  The government called two witnesses: (1) Tucson Police Department Detective Vance Padilla; and (2) Tucson Police Detective Alexandra Frieberg.   Their testimony is summarized below.

### 1.  TPD Detective Vance Padilla.

Detective Padilla testified as follows on direct examination.  Detective Padilla has worked at the Tucson Police Department for nineteen years.  (Tr. 3/24/22 at 160-161.)   On June 27, 2015, he was a detective in the gang investigative unit.  *Id.* at 161.  On that day, he responded to a hotel on West Starr Pass in connection with individuals believed to be prohibited possessors of firearms.  *Id.*  One of the individuals was Moore.  *Id.* at 162.

Detective Padilla testified that he was aware that a patrol officer had read Moore his *Miranda* rights, and he confirmed that with Moore.  *Id.* at 162-166.  Specifically, Detective Padilla asked Moore: "if an officer had already advised him of his rights. And he said he had been advised, but he did not know the officer's name.  He stated he understood his rights and that he would continue to converse with me, stating that he didn't have a problem with that."  *Id.* at 166.  Moore never invoked his *Miranda* rights during the interview.  *Id.* at 170.

Detective Padilla spoke with Moore again on August 20, 2015 at the Pima County jail.  *Id.* at 172.  The focus of that interview "was to talk about a homicide and some content from his cell phone that was reviewed and downloaded from this event."  *Id.*  Detective Padilla did not plan to speak with Moore about the June 27, 2015 arrest which led to prohibited possessor charges, and he explained that to Moore.  *Id.* at 172-173.   He also told Moore that he could "pick or choose" what questions to answer. *Id.* at 173.  Detective Padilla read Moore his *Miranda* rights and he did not invoke his rights.  *Id.*  Detective Padilla talked to Moore about "other alleged crimes" and not about "what happened on June 27, 2015."  *Id.* at 174.

Detective Padilla testified as follows on cross-examination.   Detective Padilla

1   testified that on June 27, 2015, he interviewed Moore in Detective Barber's unmarked
2   vehicle at the Super 8 motel.  *Id.* at 175.  Detective Padilla agreed with defense counsel
3   that he asked Moore if he had been read "his rights," and not "his *Miranda* rights" as he
4   testified to on direct examination.  *Id.* at 175-176.   To the best of Detective Padilla's
5   knowledge, Moore did not have an attorney at the time of this interview.  *Id.* at 180.

6        Detective Padilla was aware that Moore was appointed an attorney on the prohibited
7   possessor charge; he believes that would have happened at the initial appearance, likely the
8   day after his arrest.  *Id.* at 177-178.  As a result, Detective Padilla was aware that Moore
9   had an attorney at the time of the interview on August 20, 2015.  *Id.* at 178, 180.  Detective
10  Padilla agreed with defense counsel that he is trained that once a person is appointed an
11  attorney, he is not supposed to talk with the person about those charges without the attorney
12  being present.  *Id.* at 180-181. And that is why Detective Padilla told Moore "very early
13  on, 'I'm not here to talk about what got you here.'"  *Id.* at 181.

14       Defense counsel questioned Detective Padilla about whether certain statements in
15  the transcript of the interview conducted on August 20, 2015 pertained to the Super 8 motel
16  incident, or another alleged crime.   Detective Padilla conceded that several of his
17  statements on page 36 of Government Exhibit 4 refer to the Super 8 motel incident.  *Id.* at
18  180-183.  Specifically, Detective Padilla's statements that Moore was right that he did not
19  throw a gun and was not caught on video throwing a gun; and that Moore was indicted
20  because there was evidence, a video at the hotel, but it doesn't show Moore's face.  *Id.* at
21  183.  When asked if he talked to Moore about the prohibited possessor case on August 20,
22  2015, after he had an attorney on that case, Detective Padilla testified that he "didn't
23  specifically ask him questions about the previous case that he was in there for," but he did
24  mention it.  *Id.* at 183-184.

25       Detective Padilla was not present for the subsequent interviews of the defendant on
26  August 25, 2015 or December 10, 2015.  *Id.* at 185.

27     **2.  TPD Detective Alexandra Frieberg.**

28       Detective Frieberg testified as follows on direct examination.  She joined the TPD

in 2008, and was promoted to detective in 2013.  Tr. 3/30/22 at 4-5.  She was in the gang investigation section from 2013 to 2020.  *Id.* at 5.  She then joined the gun crime reduction unit and is currently in the homicide unit.  *Id.*

Detective Frieberg and Detective Padilla interviewed Moore on August 20, 2015, at the Pima County jail.  *Id.* at 6. At that time, Moore was facing state gun charges stemming from an arrest on June 27, 2015.  *Id.* at 6-7. Detective Padilla read Moore his *Miranda* rights and made clear to Moore that "he was seeking to talk to him about items that were not related to the circumstances that led to him being in custody for the June 27th gun charges[.]" *Id.* at 7.  Detective Frieberg testified that the purpose of the August 20, 2015 interview was to talk about information obtained from Moore's phone which related to the Floyd Davis homicide investigation.  *Id.*

Detective Frieberg also took part in an interview of Moore on December 10, 2015. *Id.* at 9.  This interview involved the same topic as the August 20, 2015 interview.  *Id.* Moore never invoked his *Miranda* rights in either interview.  *Id.* at 10.  And officers never coerced or threatened Moore during either interview.  *Id.* at 11.

Detective Frieberg testified as follows on cross-examination.   She agreed with defense counsel that Moore was in custody from June 27, 2015 through December 10, 2015.  *Id.* at 12. She also agreed that once a person has an attorney, law enforcement officers cannot speak with that person about the charge(s) without the attorney being present.  *Id.*  As a result, she makes efforts to not violate a person's right to counsel.  *Id.*

Detective Frieberg was aware that ATF was investigating federal RICO conspiracy charges "back in June through December of 2015."  *Id.* at 13.  But she did not know during that time period if Moore would get charged in a federal conspiracy case.  *Id.* at 14. Detective Frieberg agreed with counsel that there were two ATF agents present with her during the December 10, 2015 interview. *Id.*  In response to counsel's question of whether the agents were present because they were investigating a federal conspiracy case, Detective Frieberg testified that "[t]hey were there after a cooperator in the case needed assistance because the cooperator was in fear."  *Id.*  However, she later testified that "[t]hey

- 5 -

1   were also assisting in the investigation as well." *Id.* at 15.

2          Counsel then turned to the transcript of the August 20, 2015 interview of Moore, to

3   determine whether he was questioned about the Super 8 motel incident which occurred on

4   June 27, 2015.  *Id.*  Counsel pointed Detective Frieberg to statements made by Detective

5   Padilla on page 36 of Government Exhibit 4.  *Id.* at 15, 17.  Detective Frieberg testified

6   that the following statements made by Detective Padilla related to that incident: that

7   Detective Padilla threw a bunch of scenarios at Moore the last time they talked; that Moore

8   was right that he didn't throw a gun, but he was caught on video, and Detective Padilla was

9   not "bluffing" him; and Moore got indicted because there was evidence, a video, but it does

10  not show Moore's face.  *Id.* at 17-18.  Detective Frieberg did not attempt to stop Detective

11  Padilla from talking about the pending state prosecution.  *Id.* at 18.

12         Counsel turned to the transcript of the December 10, 2015 interview to inquire about

13  whether the Super 8 incident was discussed.  Gov. Ex. 11.  Detective Frieberg again

14  testified that she did not read Moore his *Miranda* rights prior to this interview.  Tr. 3/30/22

15  at 18.  Detective Frieberg was leading the interview and asking questions.  *Id.* at 19.

16  Detective Frieberg confirmed that on page 7 of Exhibit 11, Moore refers to his arrest in the

17  Super 8 case when he states that they showed him on camera touching and manipulating

18  the gun.  *Id.* at 20.  The defendant also talked about the Super 8 incident when he referred

19  to grabbing a bag, getting on the phone, walking around the parking lot while talking on

20  the phone, and not being able to hear because it was loud in the parking lot.  *Id.* at 21.  He

21  also talked about the Super 8 incident when he said that he was not showing anyone guns;

22  he was telling them to get them out of his truck.  *Id.* at 21-22. Detective Frieberg confirmed

23  that the defendant's attorney on the state case was not present for the December 10, 2015

24  interview.  *Id.* at 21.  Detective Frieberg never told Moore to stop talking about the state

25  case because his attorney was not present; she continued to allow him to talk even though

26  she knew he was represented by an attorney in that case.  *Id.* at 22.

27         On re-direct examination, Detective Frieberg testified that she never asked Moore

28  any questions about the Super 8 incident; Moore brought up the Super 8 incident.  *Id.* at

24.  She did not ask follow-up questions.  *Id.*   She only wanted to talk about the Floyd Davis homicide.  *Id.*

In response to the Court's question of why *Miranda* warnings were not given on December 10, 2015, Detective Frieberg testified that because Moore waived his rights on August 20, 2015, there was no need to *Mirandize* him again.  *Id.* at 30.

There was no testimony about the interview on August 25, 2015.  However, the transcript of that interview reflects that Moore was not read his *Miranda* rights or asked if he recalled those rights or his prior waiver of those rights, either prior to or during this interview.  *See* Gov. Ex. 8.

## DISCUSSION

### A. The Government Cannot Establish That the Defendant Knowingly, Intelligently, and Voluntarily Waived His *Miranda* Rights at the June 27, 2015 Interview.

The Court must first address a threshold issue of whether the defense counsel adequately put the government on notice that he was challenging the validity of the *Miranda* waiver at the June 27, 2015, interview.  In the Motion to Suppress, defense counsel refers to the June 27, 2015 interview in the section of that pleading titled "Introduction and Statement of Relevant Facts."  (Doc. 1148 at 1-2.)   Specifically, the defense states that "[p]age 6 of the transcript of the June 27 interrogation of Mr. Moore by Det. Padilla is equivocal as to whether Mr. Moore knowingly, intelligently and voluntarily agreed to speak" to Detective Padilla.  *Id.* at 2.

At the suppression hearing on March 24, 2022, Detective Padilla testified about the *Miranda* rights advisal and the defendant's waiver of those rights on June 27, 2015. Specifically, he confirmed with the defendant that he had been advised of "his rights" by another officer and that he understood his rights and was willing to talk.  At the conclusion of Detective Padilla's testimony, the government represented that it had no other witnesses for the June 27, 2015 interview.  Because Detective Frieberg was not available to testify that day about the other interviews at issue, the remainder of the suppression hearing was

1    set for March 30, 2022.

2          Prior to the continued suppression hearing on March 30, 2022, government counsel

3    pointed out that the defense did not refer to the June 27, 2015, interview in the legal

4    argument section of the Motion to Suppress, and the motion only asks for suppression of

5    the interviews conducted on August 20, 2015, August 25, 2015, and December 10, 2015.

6    (Tr. 3/30/22 at 33-34.)  As such, the government argued that the defense has not challenged

7    the validity of the *Miranda* waiver at the June 27, 2015 interview.  *Id*.

8          Defense counsel admitted that his pleading was "inartfully drafted" with respect to

9    his challenge to the first interview.  *Id*. at 35.  However, counsel argued that the government

10   was on notice of that challenge because it elicited testimony from Detective Padilla

11   regarding the *Miranda* waiver on June 27, 2015.  *Id*. at 35-36.

12         In response to the defense counsel's argument, the government requested leave to

13   reopen the suppression hearing so that it could present testimony from the officer who

14   administered the *Miranda* warnings on June 27, 2015.  Defense counsel objected to

15   reopening that part of the suppression hearing because the government had represented that

16   it had no other witnesses that pertained to the June 27, 2015 interview.  The Court denied

17   the government's request to reopen this portion of suppression hearing for the reasons

18   discussed below.[2]

19         The Court first notes that defense counsel's motion could have been clearer on the

20   challenge to the validity of the *Miranda* waiver at the June 27, 2015 interview.  But the

21   Court agrees with the defense that the government was on notice that the June 27, 2015

22   interview was in play for the suppression hearing for two reasons: (1) the government's

23   response to the Motion to Suppress; and (2) the testimony elicited at the evidentiary

24   hearing.

25   _____

26   [2] The Court notes that government counsel did not advise the Court that the officer who
     provided the defendant with *Miranda* warnings on June 27, 2015 was present in the
27   courtroom and available to testify. In fact, neither government counsel nor Detective
     Padilla identified the officer who would testify about the *Miranda* advisal.  Government
28   counsel also did not represent that defense counsel was provided with a report from this
     officer which documented his/her encounter with the defendant that could be utilized on
     cross-examination if the officer were allowed to testify.

1    In the government's response to the Motion to Suppress, the government argued

2 that the June 27, 2015 statements are admissible because "the totality of factors shows that

3 the defendant knowingly and voluntarily waived his *Miranda* rights." Doc. 1243 at 7.  The

4 government then quotes the conversation between Detective Padilla and Moore that

5 purportedly evidences a valid waiver of his *Miranda* rights.

6    DETECTIVE PADILLA: Okay.  So I want to continue talking to you.  Is that good?

7    Did they read you your rights?

8    SHAWMAINE MOORE:  Yeah, they read me my rights.

9    DETECTIVE PADILLA:  Did you understand them?

10   SHAWMAINE MOORE: Yep.

11   DETECTIVE PADILLA:  And can we continue to converse?

12   SHAWMAINE MOORE:   Yeah, but I don't have a (Indiscernable) with me.

13   DETECTICE PADILLA: I appreciate that.  I appreciate that.  Now, I understand

14   the Tahoe is registered to you?

15   SHAWMAINE MOORE:  Yep.

16 *Id*. at 7-8.  The government goes on to argue that this conversation and the subsequent

17 conversation shows that the defendant knowingly and voluntarily waived his *Miranda*

18 rights, and never invoked his right to remain silent or his right to counsel.

19   At the evidentiary hearing, the government played the audio recording of the

20 conversation quoted above to establish that the defendant knowingly and voluntarily

21 waived his *Miranda* rights.  (Tr. 3/24/22 at 169.)  Additionally, Detective Padilla testified

22 that this conversation is what led him to conclude that the defendant understood his rights

23 and waived his right to counsel and to remain silent.  *Id.* at 165-166, 169-170.

24   Based on the discussion above, the Court concludes that the government was on

25 notice that the validity of the *Miranda* waiver at the interview on June 27, 2015 was a

26 relevant issue in the suppression motion.  Additionally, the Court notes that defense counsel

27 did not necessarily know what witnesses the government would call at the evidentiary

28 hearing to establish the validity of the *Miranda* waiver.  Given the government's position

1   that there was a valid waiver, defense counsel could well have believed the government

2   would call the officer who advised Moore of his rights as a witness to establish the validity

3   of the waiver.  However, the government only called Detective Padilla to testify about the

4   *Miranda* waiver, and he could not testify about the specific rights provided to the

5   defendant.  Thus, as discussed below, the government did not connect the dots necessary

6   to establish a knowing, intelligent, and voluntary *Miranda* waiver.[3]

7           In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a suspect

8   must "be told, before questioning, that 'he has the right to remain silent, that anything he

9   says can be used against him in a court of law, that he has the right to the presence of an

10  attorney, and that if he cannot afford an attorney one will be appointed for him prior to any

11  questioning if he so desires.'"  *United States v. Loucious*, 847 F.3d 1146, 1149 (9th Cir.

12  2017) (quoting *Miranda*, 384 U.S. at 479).  "Custodial statements are inadmissible unless

13  the suspect is warned of his or her *Miranda* rights and the suspect knowingly and

14  intelligently decides to forgo those rights."  *Loucious*, 847 F.3d at 1149.  There is not

15  "talismanic incantation" of this warning that is necessary to satisfy *Miranda's* strictures.

16  *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989); *Loucious*, 847 F.3d at 1149.

17  "Rather, what *Miranda* requires 'is meaningful advice to the unlettered and unlearned in

18  language which [they] can comprehend and on which [they] can knowingly act.'"  *Connell*,

19  869 F.2d at 1351 (quoting *Coyote v. United States*, 380 F.2d 305, 308 (10th Cir. 1967).

20          In order to combat the pressures "[inherent in a custodial interrogation] and to

21  permit a full opportunity to exercise the privilege against self-incrimination, the accused

22  must be adequately and effectively apprised of his rights and the exercise of those rights

23  must be fully honored."  *Doody v. Schiro*, 548 F.3d 847, 862 (9th Cir. 2008) (quoting

24  *Miranda*, 384 U.S. at 467).  "The warning that anything the suspect says can be used

_____

[3] Detective Padilla's mere confirmation that the defendant was advised of "his rights" by another officer should have raised a huge red flag for the government that the adequacy of the *Miranda* warnings provided on June 27, 2015 could be problematic or at least an issue. That is especially true because the government elicited testimony from Detective Padilla to establish that the defendant validly waived his *Miranda* rights.  As discussed in *text infra*, and as the government well knows, the validity of a *Miranda* waiver goes hand in hand with the adequacy of the advisal of *Miranda* rights.

- 10 -

1  against him in court serves in substantial part to ensure that the suspect is aware of the

2  seriousness of the situation[.]" *Doody*, 548 F.3d at 862.

3

4     > This warning is needed in order to make him aware not only of the privilege,
      > but also of the consequences of forgoing it.  It is only through an awareness

5     > of these consequences that there can be any assurance of real understanding
      > and intelligent exercise of the privilege.  Moreover, this warning may serve

6     > to make the individual more acutely aware that he is faced with a phase of
      > the adversary system — that he is not in the presence of persons acting solely

7     > in his interest.

8  *Miranda*, 384 at 469.  Thus, "the protection *actually provided* in any given case depends

9  on how effective the warnings as given and implemented were in conveying their layered

10 messages." *Doody*, 548 F.3d at 862.

11      As should already be apparent from the discussion above, there is no way for this

12 Court to determine whether the safeguards provided for by *Miranda* warnings were

13 satisfied here.  There was no evidence presented as to whether the defendant was provided

14 with "meaningful advice" in language that he could comprehend and on which he could

15 knowingly act.     The transcript of the defendant's interview merely reflects his

16 acknowledgement that he was read "his rights."    Detective Padilla's testimony was the

17 same – he confirmed that the defendant was previously read "his rights."  In the absence

18 of any evidence that the defendant was adequately and effectively apprised of his *Miranda*

19 rights prior to the interview on June 27, 2015, the Court cannot conclude that the defendant

20 validly waived those rights.  As a result, the statements made during the June 27, 2015

21 interview must be suppressed.

22

23   **B.  The Defendant's Sixth Amendment Right to Counsel Was Violated At**
         **Points During the Interviews on August 20, 2015 and December 10, 2015.**

24

25     **1.  The Right to Counsel Was Not Violated For All Interviews Conducted**
            **After June 27, 2015.**

26      The defendant first argues that the Sixth Amendment right to counsel was violated

27 for all the post-June 27, 2015 interviews.  The defendant notes he was represented by

28 counsel on the state prohibited possessor offense which stemmed from the Super 8 motel

incident, which is also an overt act alleged in Count One of the Second Superseding Indictment.  The defendant reasons that the Super 8 incident and the Floyd Davis homicide, which were the primary subject areas of the later interviews, should not be viewed separately because they are both essential and integral parts of the proof the government intends to prove as the "purposes" and manner and means of the RICO conspiracy.   As a result, the defendant asserts that the interviews conducted without his state attorney on August 20, 2015, August 25, 2015, and December 10, 2015 violated his Sixth Amendment right to counsel, and should therefore be suppressed.

While it is not entirely clear to the Court, the defense seems to be arguing that the Super 8 motel incident which led to the state prohibited possessor charge is so factually connected with the federal charges (or at least the RICO conspiracy) that state counsel essentially "represented" the defendant on the subject matters at issue in the Second Superseding Indictment.   If that is indeed the argument, the Supreme Court rejected such an argument in *Texas v. Cobb*, 532 U.S. 162 (2001).  In that case, the Supreme Court reaffirmed that the Sixth Amendment right to counsel is offense specific and held that the Sixth Amendment is not violated because one charged offense is "factually interwoven" with an uncharged offense.   Thus, this Court rejects the defense argument that the defendant's right to counsel was violated with respect to all statements made during the post-June 27, 2015 interviews because his state attorney was not present.

### 2.  The Interviews on August 20, 2015 and December 10, 2015.

The defendant next argues that his Sixth Amendment right to counsel was violated during the interviews on August 20, 2015 and December 10, 2015 when law enforcement spoke with him specifically about the Super 8 motel incident that led to his arrest on June 27, 2015, and the state prohibited possessor charge.  The defense reasons that because the defendant was represented by counsel on the state offense when these later interviews were conducted, officers violated his Sixth Amendment right to counsel by questioning him about matters related to the state charge**.**

The government argues that the Sixth Amendment is offense specific and did not

1    prohibit law enforcement from questioning the defendant about uncharged crimes.  With

2    respect to the Super 8 motel incident discussed in these later interviews, the government

3    argues that the Sixth Amendment right to counsel was not violated because the defendant

4    waived his right to have counsel present for those interviews.

5          In *Michigan v. Jackson*, 475 U.S. 625, 636 (1986), the Supreme Court announced a

6    prophylactic rule that barred police from approaching represented defendants.   The

7    Supreme Court invalidated that rule in *Montejo v. Louisiana*, 556 U.S. 778, 797-798

8    (2009), along with the notion that the waiver of a represented defendant's right to counsel

9    is presumptively invalid.   The Court in *Montejo* emphasized that a defendant has the ability

10   to clearly assert, and thus sufficiently safeguard, his right to counsel at any critical stage

11   following indictment, and it rejected the notion that acquisition of counsel affected the

12   ability to waive the right to counsel.  *Montejo*, 556 U.S. at 786.  As such, the Court held

13   that a defendant may waive his right to counsel even if he is already represented by counsel,

14   and that the decision to waive his Sixth Amendment right to counsel "need not itself be

15   counseled."  *Id.*

16         The Court found that the defendant's argument "appear[ed] to have its theoretical

17   roots in codes of legal ethics, not the Sixth Amendment."  *Id.* at 790.  Specifically, Rule

18   4.2 of the ABA's Model Rules of Professional Conduct mandate that "a lawyer shall not

19   communicate about the subject of [a] representation with a person the lawyer knows to be

20   represented by another lawyer in the matter, unless the lawyer has the consent of the other

21   lawyer or is authorized to do so by law or a court order."  *Id.* (*quoting* Model Rule 4.2

22   (2008)).   But, as the Court pointed out, the Constitution does not codify the ABA's Model

23   Rules, and does not make investigating police officers lawyers.  *Id.*

24         At oral argument, defense counsel stressed that if the Sixth Amendment right to

25   counsel does not apply to the situation at hand, law enforcement officers could routinely

26   go to the jail to speak with represented defendants.  That certainly appears to be the upshot

27   of *Montejo*.  But, in practice, defense attorneys routinely make clear to the prosecutor, who,

28   in turn, will make clear to law enforcement officers, that the defendant is invoking his right

1   to counsel with respect to the charged offense(s).  As a result, officers will know that they

2   cannot speak with a defendant without counsel present about the charged offense(s), or

3   face suppression of any statements if they do so.  Indeed, that is what the Sixth Amendment

4   requires.  *See Montejo*, 556 U.S. at 797 (if the accused asserts his Sixth Amendment right

5   to counsel then no interrogation about the charged offense can take place unless the accused

6   initiates the conversation); *Patterson v. Illinois*, 487 U.S. 285, 291 (1988) (when the Sixth

7   Amendment right to counsel is invoked, law enforcement may not interview the accused

8   about the charged offense).

9         Here, the only reasonable conclusion is that the defendant had invoked his Sixth

10   Amendment right to counsel on the prohibited possessor offense prior to the interviews on

11   August 20, 2015 and December 10, 2015.  That conclusion is supported by the fact the

12   defendant's *Miranda* waiver at the August 20, 2015 interview was premised on the fact

13   that detectives were not there to talk about the state case, which was the subject of the June

14   27, 2015 interview. [4]  Specifically, before advising Moore of his *Miranda* rights, Detective

15   Padilla explains to Moore that the interview "has nothing to do with that day I – we picked

16   you up."  (Gov. Ex. 4 at 4.)

17         Additionally, both Detective Padilla and Detective Frieberg testified that they

18   were cognizant of the fact that the defendant had an attorney on the prohibited possessor

19   case, so they avoided discussion about that case during the interviews on August 20, 2015

20   and December 10, 2015.  Specifically, Detective Padilla testified that he is trained that once

21   a person is appointed an attorney, he is not supposed to talk with the person about those

22   charges without the attorney being present.  (Tr. 3/24/22 at 180-181.)  Because he was

23   aware that Moore had an attorney on the prohibited possessor charge at the time of the

24   interview on August 20, 2015, he made clear to Moore "very early on" that he was "not

25   here to talk about what got you here.'"  *Id.* at 181.  Similarly, Detective Frieberg testified

26   that once a person has an attorney, law enforcement officers cannot speak with that person

27
28
---
[4]  That conclusion also makes sense given that the defendant had counsel on the state charge for almost a month before the August 20, 2015 interview.  Moreover, the December 10, 2015 interview occurred the day after the defendant's conviction on the prohibited possessor charge while he was pending sentencing.

about the charge without the attorney being present.  (Tr. 3/30/22 at 12.)  As a result, she makes efforts to not violate a person's right to counsel.  *Id*. at 12.   Detective Frieberg testified that she never asked Moore any questions about the Super 8 incident.  *Id*. at 24. Rather, Moore brought up the Super 8 incident and she did not ask follow-up questions. *Id.*  She only wanted to talk about the Floyd Davis homicide.  *Id.*

Based on this testimony, it was clear to Detective Padilla and Detective Frieberg that the defendant invoked his right to counsel with respect to the state charge.  As a result, both detectives knew that they could not talk with the defendant about the pending state offense and made clear to the defendant that they did not want to talk about the Super 8 incident.   As discussed below, despite their best intentions, the Super 8 incident was discussed at the interviews on August 20, 2015 and December 10, 2015.

The detectives strayed and allowed the defendant to stray into discussions about the state charge during the interviews on August 20, 2015 and December 10, 2015; by doing so, the defendant's Sixth Amendment right to counsel was violated.  During the interview on August 20, 2015, Detective Padilla asked questions about the Super 8 incident and the defendant responded to those questions.   Detective Frieberg testified that she did not attempt to stop Detective Padilla from talking about the pending state prosecution during the August 20, 2015 interview.  *Id*. at 18.  To be sure, the defendant veered into that subject matter on his own accord during the December 10, 2015 interview.  But Detective Frieberg testified that she never told Moore to stop talking about the state case because his attorney was not present; she continued to allow him to talk even though she knew he was represented by an attorney in that case.  *Id*. at 22.

Because the defendant invoked his Sixth Amendment right to counsel with respect to the state prohibited possessor charge, law enforcement officers could not question him about that charge in later interviews.  As such, the statements made about the pending state charge (by both the detectives and Moore) during the interviews on August 20, 2015 and December 10, 2015 violated the defendant's Sixth Amendment right to counsel. For that

1   reason, those statements must be suppressed.[5]

2   **C. Law Enforcement Officers Were Required to Readvise the Defendant of His**
3   ***Miranda* Rights Prior to the Interviews on August 25, 2015 and December**
4   **10, 2015.**

5       The defense argues that Moore's statements made during interviews on August 25,

6   2015 and December 10, 2015 should be suppressed because he was not provided with

7   *Miranda* warnings prior to either interview.   The government argues that because the

8   defendant was provided with *Miranda* warnings on August 20, 2015 and agreed to speak

9   with law enforcement, the breaks in questioning did not require that *Miranda* warnings be

10  repeated.

11      The Supreme Court has rejected "a per se rule as to when a suspect must be

12  readvised of his rights after the passage of time or a change in questioners."  *United States*

13  *v. Andaverde,* 64 F.3d 1305, 1312 (9th Cir. 1995) (citing *Wyrick v. Fields*, 459 U.S. 42, 48-

14  49 (1982) (per curiam)).   Rather, a court should determine whether a re-advisal of rights

15  was required based on the totality of circumstances.  *United States v. Rodriguez-Preciado*,

16  399 F.3d 1118, 1128 (9th Cir. 2005).

17      In *Guam v. Dela Pena*, 72 F.3d 767, 770 (9th Cir. 1995), the Ninth Circuit upheld

18  the admissibility of statements made nearly fifteen hours after *Miranda* warnings were

19  administered.  Subsequently, in *Rodriguez-Preciado*, the Ninth Circuit relied on *Dela Pena*

20  in upholding the admissibility of statements made sixteen hours after a *Miranda* waiver.

21  399 F.3d at 1129-1130.  In *Andaverde*, which involved a ten-minute interval and a change

22  of interrogators, the Ninth Circuit cited to several cases and the length of the interval at

23  issue in those cases which was found permissible.  64 F.3d at 1312 (*citing Jarrell v.*

24  *Balkcom,* 735 F.2d 1242, 1254  (9th Cir. 1984) (three-hour interval permissible); *United*

25  *States v. ex rel. Patton v. Thieret*, 791 F.2d 543, 547 (7th Cir. 1986) (forty-minute interval

26  _____

27  [5]  As discussed in Section C in *text infra*, the Court finds that all of the statements made
    during the December 10, 2015 interview should be suppressed based on a different
    constitutional violation.

28

- 16 -

permissible); *Evans v. McCotter,* 790 F.2d 1232, 1238 (5th Cir. 1986) (half hour break in questioning did not require re-administration of rights); *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir. 1985) (five-hour interval permissible); *Baskin v. Clark*, 956 F.2d 142, 146 (7th Cir. 1992) (thirty-minute interval permissible)).

While there is no *per se* time limit as to when a suspect must be re-advised of his rights after a break in questioning, the cases discussed and cited above were dealing with delays of hours, and not days and months like in the case at hand.  The Court has not been pointed to any case where a court has held that a re-advisal of *Miranda* rights was not required when the time interval between the initial *Miranda* warnings and a later interview was more than a day, let alone five days or four months.  Thus, the Court concludes that the substantial amount of time that passed between *Miranda* warnings and the interviews on August 25, 2015 and December 10, 2015 required law enforcement to readvise the defendant of his *Miranda* rights.

The government argues that law enforcement was simply trying to obtain the defendant's cooperation during the August 25, 2015 and December 10, 2015 interviews.  But if that were the case, the interviews would have been short and sweet given that the defendant declined to cooperate.  The transcript of the August 25, 2015, interview is eighteen pages.  While that was not an especially long interview, it certainly encompassed more than just asking the defendant to cooperate.  And the transcript of the December 10, 2015 interview is over 100 pages, so there is no way that this interview only consisted of an effort to get the defendant to cooperate.

The government also argues that the interviews on August 25, 2015 and December 10, 2015 covered the same subject matter as the August 20, 2015 interview when the defendant validly waived his *Miranda* rights.   For that reason, the government argues that the defendant did not need to be readvised of his *Miranda* rights before the interviews on August 25, 2015 and December 10, 2015.

In response to the government's argument that the interviews involved the same subject matter, the Court pointed out that it could not alone make that determination.  The

Court explained that it was operating in a vacuum as to the subject matter(s) discussed given its limited knowledge of the breadth of the investigation of the defendant specifically and the Western Hills Bloods generally.  As a result, the Court advised the government that it needed to provide testimony or other evidence to make clear the subject matter(s) discussed during the interviews on August 20, 2015, August 25, 2015 and December 10, 2015.

The need for clarity is best evidenced by the testimony about the Super 8 motel incident discussed earlier, which led to the defendant's arrest and the June 27, 2015 interview, and which was brought up in subsequent interviews.  Neither the officers who conducted the interviews on August 20, 2015 or December 10, 2015 nor the defendant specifically mentioned the Super 8 motel by name during these interviews.  But, in response to questions by both counsel, Detective Padilla and Detective Frieberg were able to pinpoint, based their knowledge of their investigation, which questions and/or the defendant's responses or statements were related to the Super 8 motel incident.  If it were not for that testimony, this Court simply would not have known which subject area – Super 8, Floyd Davis, or something unrelated to either – was being discussed during the interviews on August 20, 2015 and December 10, 2015.

The same could have been easily done for the interview on August 25, 2015, as well as the entirety of the interview on December 10, 2015.  However, the government did not provide the Court with evidence that the subject matter of those interviews was the same as the interview on August 20, 2015.  The interviewing detectives could have methodically pointed out during their testimony the specific subject matter discussed during various parts of the interviews at issue.  That was not done.  In fact, there was no testimony about the substance of the interview conducted on August 25, 2015.   As a result, the Court cannot accept the government's argument *Miranda* warnings were not required because the subject matter of these interviews was the same.

Finally, the Court notes that even if the subject matter of the interviews on August 25, 2015 and December 10, 2015 was the same as the August 20, 2015 interview, that does

not mean that law enforcement did not question the defendant about facts or developments in the investigation that were related to that subject matter, but which were not discussed earlier.  There is little doubt that the investigation into the Floyd Davis murder specifically, and the Western Hills Bloods generally, was ongoing during the time that passed between interviews.  In the absence of any evidence to the contrary, it is a fair inference that the facts learned during the ongoing investigation were discussed with the defendant at later interviews, especially the December 10, 2015 interview. Thus, it was important to readvise the defendant of his *Miranda* rights for that reason as well.

The absence of any evidence that the same subject matter and/or the facts were discussed at the post-June 27, 2015 interviews further supports the Court's conclusion that *Miranda* warnings should have been provided to the defendant before the interviews were conducted on August 25, 2015 and December 10, 2015.  The failure to do so given the substantial time that passed after the initial *Miranda* advisal requires the suppression of statements made during those interviews.

## **CONCLUSION**

For the reasons discussed above, the Court recommends that the District Court grant the Motion to Suppress, in part, and exclude from evidence all statements made during the interviews on June 27, 2015, August 25, 2015, and December 10, 2015, as well as statements made during the August 20, 2015 interview that pertain to the then-pending state prohibited possessor charge.

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If any objections are filed, this action should be designated case number: **CR 18-01695-TUC-JAS**.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration

1    of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en

2    banc).

3              Dated this 17th day of May, 2022.

_____
Eric J. Markovich
United States Magistrate Judge